UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Master File No. 00-1334-MD-MORENO
Tag-Along Case No. 06-21156-CIV-MORENO

IN RE: MANAGED CARE LITIGATION
_____,

MICHAEL D. McCORD, M.D., P.A.,

      Plaintiff,

vs.

AETNA HEALTH, INC., *et al.*,

      Defendants.
_____/

**REPORT AND RECOMMENDATION ON DEFENDANTS'
MOTION TO DISMISS THE COMPLAINT**

      This matter is before the Court on Defendants' Motion to Dismiss the Complaint [D.E. 16]. The Court has reviewed the motion, Plaintiff's response, the reply, related authorities submitted by the parties, and the record in the case. For the foregoing reasons the motion to dismiss should be granted.

### *I.   BACKGROUND*

      The Plaintiff brought the above-captioned matter in August 2005, asserting claims for tortious interference with a contract and negligent misrepresentations under Texas law. The case was initially filed in Texas state trial court of the District Court of Jefferson County, Texas. On September 9, 2005, Defendants filed their Notice of Removal of Civil Action, claiming federal preemption under Section 502(a) of the

Employee Retirement Income Security Act ("ERISA"). Thereafter, the case was removed to the United States District Court for the Eastern District of Texas. After the removal, Plaintiff filed its Motion to Remand challenging ERISA's preemption as the basis for federal jurisdiction. However, before the Texas court ruled on the motion, the MDL panel transferred the case to this Court due to its common questions of law and fact with other cases involved in the *In re: Managed Care Litigation*. After the transfer, the case remained stayed while this Court completed pre-trial proceedings in th lead provider track case, *Shane v. Humana, Inc.* On February 19, 2008, Judge Moreno denied all pending motions with leave to refile [D.E. 9]. The case was reopened and lifted from civil suspense on April 14, 2008 [D.E. 14].

Plaintiff Michael D. McCord, M.D., P.A., a professional association located in Beaumont, Texas, is a medical provider ("Plaintiff" or "McCord"). Defendants, Aetna Health, Inc. and Aetna Healthcare, Inc., engage in the business of providing health insurance coverage to their policy holders ("Defendants"). McCord is an "out-of-network" provider with no contractual relationship to Defendants.

According to the allegations listed in the Class Action Petition for Injunctive Relief ("Class Action Complaint"), Plaintiff charges his patients for medical services at prices set by him. Defendants' insureds/patients may choose to seek medical care from "out-of-network" physicians, but, depending on the specific contract between Defendants the insureds/patients, Defendants may have reduced obligations to pay for such services on behalf of the insureds. Plaintiff contends that the insureds/patients are responsible for any unpaid balance on the account (actual amount charged by the

provider minus the actual amount of reimbursement paid by the insurer).

Plaintiff alleges that after each Defendant reimburses an "out-of-network" provider in accordance with its obligation under a given insurance contract, they incorrectly calculate and inform the insured/patient about his/her remaining financial obligation to the provider. Plaintiff contends that instead of calculating the insured/patient's remaining financial obligation based on the actual amount charged by the provider, Defendants calculate such amount in accordance with their own "reduced" rates. These alleged "misrepresentations" are the basis for Plaintiff's tortious interference with contract and negligence claims. Plaintiff emphasizes that it is not challenging Defendants' calculations of their financial obligations under a given insurance contract. Instead, the Class Action Complaint seeks only an injunction to stop Defendants' alleged "misrepresentations" to their insureds/patients that they owe anything less than the balance of the amount charged by an "out-of-network" provider minus any amount paid by Defendants.

Defendants argue in their Motion to Dismiss that the entire complaint should be dismissed because Plaintiff's state law claims of tortious interference with contract and negligence are preempted by Section 502(a) of ERISA.

## II.   ANALYSIS

The purpose of a motion under Fed. R. Civ. P. 12(b)(6) is to test the facial sufficiency of a complaint. The rule permits dismissal of a complaint that fails to state a claim upon which relief can be granted. It should be read alongside Fed. R. Civ. P. 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Pursuant to *Bell Atlantic Corp. v. Twombly*, 127 S. Ct.

1955, 1965 (2007), to survive a 12(b)(6) motion to dismiss, a complaint must contain factual allegations that are "enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true." Although a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff is still obligated to provide the "grounds" for his entitlement to relief, and "a formulaic recitation of the elements of a cause of action will not do." *Berry v. Budget Rent A Car Systems, Inc.*, 497 F. Supp. 2d 1361, 1364 (S.D. Fla. 2007) (quoting *Twombly*, 127 S. Ct. at 1964-65).

The Court must "view all the allegations of the complaint in the light most favorable to the plaintiff, consider the allegations of the complaint as true, and accept all reasonable inferences therefrom." *Omar v. Lindsey*, 334 F.3d 1246, 1247 (11th Cir. 2003). Thus, a complaint will be dismissed only if taking facts as true, no construction of the factual allegations will support the cause of action. *Berry,* 497 F. Supp. 2d at 1364 (citing *Marshall Cty. Bd. of Educ. v. Marshall Co. Gas Dist.,* 992 F.2d 1172, 1174 (11th Cir. 1993)). A well-pleaded complaint will survive a motion to dismiss "even if it strikes a savvy judge that actual proof of these facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 127 S. Ct. at 1965 (internal citation omitted).

The Class Action Complaint asserts Texas state law claims for negligence and tortious interference with contract. These claims allegedly arise out of statements that Defendants communicated and continue to communicate to its subscribers regarding insureds/patients' "remaining financial obligation" to Plaintiff provider. As a

proximate cause of Defendants' statements, patients refuse to pay Plaintiff and the Class at their customary rates. [Class Action Complaint D.E. 20-2 ¶ 28]. Furthermore, Plaintiff alleges that, once patients have received a billing statement from Defendants that inaccurately indicates a reduced balance, Plaintiff and the Class are prejudiced and irreparably harmed in their efforts both to collect their charges and to remain on good terms with their patients. *Id.*

ERISA was enacted in order to create a consistent and coherent nationwide framework for regulating employee benefit plans. *See generally Shaw v. Delta Air Lines Inc.*, 463 U.S. 85, 99 (1983). Consequently, it expressly displaces or preempts the application of state laws that bear a relation to the matters addressed in ERISA. It is now clearly settled that ERISA preemption comes in two varieties.

On one hand, Section 514(a) preemption, also called "defensive" or "conflict preemption," holds that ERISA "shall supersede any all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). Defensive preemption applies broadly to any claim that "relates to" an ERISA plan, and may be pled as "an affirmative defense to state law claims." *In re Managed Care Litigation*, 298 F. Supp. 2d 1259, 1288 (S.D. Fla. 2003) (citing *Butero v. Royal Maccabees Life Ins. Co.*, 174 F.3d 1207, 1211 (11th Cir. 1999)). Defensive preemption, however, does not have jurisdictional implications. In other words, it does not divest a state court of jurisdiction to hear any claim that "relates" to an ERISA plan and does not automatically give rise to federal subject matter jurisdiction warranting removal. *See id.*

On the other hand, Section 502(a) preemption, also called "complete or "super-preemption," does have jurisdictional implications, but only for a narrow band of ERISA claims. The ERISA statute creates exclusive federal jurisdiction (without regard to the diverse citizenship of the parties or the amount in controversy) over any civil action brought by an ERISA participant or beneficiary "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a), (e)-(f).

Due to the carefully crafted enforcement scheme and expansive preemption provisions of ERISA, "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Aetna Health, Inc. v. Davila*, 542 U.S. 200, 209 (2004). The ERISA civil enforcement mechanism is one of those provisions with such "extraordinary pre-emptive power" that it "converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Id.* (quoting *Metropolitan Life Ins. co. v. Taylor*, 481 U.S. 58, 65-66 (1987)). Therefore, "causes of action within the scope of the civil enforcement provisions of Section 502(a) [are] removable to federal court." *Davila*, 542 U.S. at 209. The state law cause of action need not precisely duplicate the elements of an ERISA claim to be preempted. *Id.* at 215.

Defendants argue that the claims asserted in the Class Action Complaint are subject to Section 502(a) "complete" preemption. Furthermore, the pending motion raises the same issue as Plaintiff's Motion to Remand that was filed prior to this case

being put in a civil suspense [Master File No. 00-1334-MD-MORENO D.E. 5670]. Essentially, if we find Plaintiff's claims not to be preempted under Section 502(a), no basis for federal jurisdiction exists and the case should be remanded back to the state court. If, however, we conclude that Section 502(a) preemption applies, the Class Action Complaint should be dismissed and Plaintiff's claims can only be refiled pursuant to ERISA.

In order for state law claims to be subject to ERISA complete preemption, the following four elements must be present: (1) a relevant ERISA "plan;" (2) the plaintiff must have standing to sue; (3) the defendant must be an ERISA entity; and (4) the complaint must seek relief akin to what is available under 29 U.S.C. § 1132(a). *Butero*, 174 F.3d at 1212.

Defendants contend that complete preemption applies because Section 502(a)(1)(B) allows an ERISA plan "participant or beneficiary" to bring a civil action to, *inter alia*, "to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). In addition, Section 502(a)(3) permits "beneficiaries" to "enjoin any act or practice which violates any provision of [the Protection of Employee Benefit Rights] subchapter or the terms of the plan, or to obtain other appropriate equitable relief to redress such violations or to enforce any provision of [the] subchapter . . . ." 29 U.S.C. § 1132(a)(3). Therefore, according to Defendants, McCord, as an assignee of the beneficiary, can seek a clarification as to what given beneficiary's liability is for a given procedure.

We will next examine each of the four elements of the *Butero* test.

### A.     *A Relevant ERISA Plan*

Plaintiff argues that the first prong of the *Butero* test is not satisfied because his claims "do not challenge Defendants' practices under an ERISA plan." *See* Plaintiff's Response at 9 [D.E. 17]. Plaintiff's interpretation of the first prong of the *Butero* test, however, is incorrect. Contrary to Plaintiff's assertion, 502(a) preemption does not only apply when "plaintiff's complaint involves a relevant ERISA plan." *See id.* Instead, regardless of the merits of the plaintiff's actual claims, only the existence of a relevant ERISA plan must be present. *Butero*, 174 F.3d at 1212. The allegations in the complaint do not have to directly state that Defendants' practices under a given ERISA plan are challenged.

Plaintiff never questions in its Response that the plans administered by Defendants are not governed by ERISA. Furthermore, ERISA's complete preemption doctrine is an exception to the "well-pleaded" complaint rule, thus this Court must independently analyze whether preemption applies. *In re Managed Care Litig.*, No. 05-23326-CIV, 2009 WL 205058, at *4 n.4 (S.D. Fla. Jan. 23, 2009). The Court is not bound by the four corners of Plaintiff's complaint, and may look elsewhere to clarify whether Plaintiff's claims encompass an action within federal jurisdiction. *Id.* In their Opposition to Plaintiff's Motion to Remand, Defendants submitted affidavits and demonstrated that the "healthcare policies" referred to in the Class Action Complaint are ERISA-governed plans. *See* Defendants' Opposition to Plaintiff's Motion to Remand at 2-3 (Master File No. 00-1334-MD-MORENO D.E. 5696]. Plaintiff never disputed this assertion.

We conclude that the first prong of the *Butero* test is satisfied here.

### B.     *Plaintiff has Standing to Sue*

By its very terms, Section 502(a) provides for preemption only in suits for benefits among ERISA entities. *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 ("the policy choices reflected in the inclusion of certain remedies and the exclusion of others would be completely undermined if *ERISA - plan participants and beneficiaries* were free to obtain remedies under state law that Congress rejected in ERISA") (emphasis added). Part of this dispute, therefore, boils down to whether the Provider Plaintiff is considered an "ERISA entity" who has standing to pursue an ERISA civil enforcement. The only parties with standing to sue under ERISA are those listed in the civil enforcement provision of ERISA, codified at 29 U.S.C. § 1132(a)(1)(B). A plaintiff must either be a "participant" or a "beneficiary" of the ERISA plan in order to have standing. *See, e.g., Hobbs v. Blue Cross Blue Shield of Ala.*, 276 F.3d 1236, 1241 (11th Cir. 2001).

Generally, healthcare providers like the Plaintiff in this case lack independent standing under ERISA's statutory scheme because they are not ordinarily considered "beneficiaries" or "participants." *See Cagle v. Bruner*, 112 F.3d 1510, 1514 (11th Cir. 1997). However, when they receive assignments of benefits from beneficiaries or participants of an ERISA plan, they can acquire derivative standing. *Id.* Therefore, whether complete preemption applies is largely a function of whether an existing assignment entitles the provider to have standing under ERISA, or whether the provider can "step into the shoes" of a participant beneficiary. *In re Managed Care Litig.*, 298 F. Supp. 2d at 1290.

Plaintiff is not disputing that it possesses valid assignments from its patients. Instead, McCord argues that it "is not suing as an assignee of Defendants' insureds."

This Court, however, has rejected this precise argument on numerous previous occasions. Simply put, Plaintiff cannot simply ignore the existence of such assignments. As such, Plaintiff possesses derivative standing under controlling Eleventh Circuit precedent. *See Cagle*, 112 F.3d at 1510 (holding that healthcare provider had derivative standing to bring an action against an ERISA plan insurance fund where the record showed that the provider had been assigned the right to payment of medical benefits); *see also Rodriguez v. Health Options, Inc.*, No. 03-20429-CIV-MORENO, at 7 (S.D. Fla. Aug. 27, 2003) ("The Court finds that [Provider] Plaintiff, whether voluntarily or involuntarily, still retains derivative standing to sue under ERISA'[s] statutory scheme.").

The Court finds that the second requirement for complete preemption has also been met.

### C. *Defendant is an ERISA Entity*

ERISA entities include the employer, the plan, the plan fiduciaries, and the beneficiaries under the plan. *Morstein v. Nat'l Ins. Servs. Inc.*, 93 F.3d 715, 722 (11th Cir. 1996). Plaintiff is not disputing that Defendants acted as fiduciaries for all plans under which Plaintiff submitted its claims. Instead, Plaintiff argues that under the reasoning in *Butero* Defendants are not ERISA entities with respect to McCord's claims. Specifically, Plaintiff claims that, in contrast to *Butero*, McCord does not dispute insurance coverage or the computation of amounts owed by Defendants on behalf of their insureds to "out-of-network" providers for services provided. Therefore, according to Plaintiff, because McCord seeks no control over the payment of benefits or determination of insureds' rights under their plan, Defendants are not an ERISA

entity. We find Plaintiff's contention unconvincing.

Plaintiff is correct the *Butero* decision addressed a defendant's role as a fiduciary of a given plan in determining payment of benefits and determination of insureds' rights under their plan. However, Plaintiff fails to recognize that its claims challenge the communication between Defendants and the insureds. Defendants, as fiduciaries of the plan, have a duty to communicate to the insureds full and accurate information regarding the plan. *See In re Long Island Lighting Co.*, 129 F.3d 268, 271 (2d Cir. 1997). Furthermore, calculation of the insureds' remaining financial obligation is in essence a determination of insureds' rights under a given plan. *See Butero*, 174 F.3d at 1213; *see also Mayeaux v. Louisiana Health Serv. and Indem. Co.*, 376 F.3d 420, 433 (5th Cir. 2004) (finding a medical practitioner's claims for defamation and intentional interference conflict preempted under Section 514(a) because communication between plan administrator and the beneficiary regarding plan benefits is at the core of the relationship between traditional ERISA entities, of which the treating physician is not one).

Because we find that Defendants are ERISA entities, the third part of the *Butero* test is also satisfied.

### D. *Complaint Seeks a Relief Akin to What is Available Under 29 U.S.C. § 1132(a)*

In possessing an assignment, Plaintiff/Assignee "stands in the shoes" of the beneficiary. Therefore, in order to better address this part of the *Butero* test, it is helpful to analyze this situation as if there was no assignment and it was the beneficiary himself bringing an enforcement action. For example, after a beneficiary

obtains services from the provider, the provider sends a bill to the beneficiary for $100. Meanwhile, the beneficiary files a claim with the insurer. Insurer responds by sending a check for $80 and stating the beneficiary's remaining obligation to the provider is a $10 co-payment. At this point, the beneficiary may be puzzled. On one hand, he faces the provider who is demanding a payment of $100, while on the other hand, the insurer instructs him that full payment to the provider under the controlling plan is $90. In other words, the beneficiary may be unsure about his payment obligation and responsibility due to the two conflicting invoices. ERISA provides an avenue for the beneficiary to resolve this problem.

Section 502(a)(1)(B) allows a beneficiary to bring a civil action to "enforce his rights under the terms of the plan or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Furthermore, under Section 502(a)(3), a beneficiary may seek "equitable relief" to "enjoin any act or practice which violates any provision of [the Protection of Employee Benefit Rights] subchapter or terms of the plan." 29 U.S.C. § 1132(a)(3). Therefore, the beneficiary may, via Section 502(a)(1)(B), seek clarification from the insurer about the scope of his obligation under the plan. If, as McCord alleges, the insurer is misinforming the beneficiary about his responsibility under the plan, the beneficiary may, via Section 502(a)(3), seek an injunction to enjoin the insurer from continuing sending misrepresentations or misleading statements in order to "clarify his rights to future benefits." In other words, a beneficiary's financial obligation is controlled by the terms of each plan, thus the enforcement provision under Section 502(a) allows a beneficiary to seek clarification of whether the financial obligation as calculated by the insurer is correct under the plan.

Should McCord decide to refile this action as an ERISA claim, we are of no opinion whether Plaintiff may eventually prevail on the merits and obtain the injunctive relief he prays for. Congress enacted ERISA to "protect . . . the interests of participants in employee benefit plans and their beneficiaries" by setting out substantive regulatory requirements for employee benefit plans and to "provid[e] for *appropriate remedies*, sanctions, and ready access to the Federal courts." *Davila*, 542 U.S. at 208 (citing 29 U.S.C. § 1001(b)) (emphasis added). Thus, provider/assignee standing "in the shoes" of the beneficiary may not be entitled, based on the merits of his claims, to the relief he seeks under the applicable ERISA scheme. As Justice Ginsburg points out, "a series of the [Supreme] Court's decisions has yielded a host of situations in which persons adversely affected by ERISA-proscribed wrongdoing cannot gain make-whole relief." *Id.*, at 222 (Ginsburg, J., concurring) ("I . . . join the rising judicial chorus urging that Congress and [the Supreme] Court revisit what is an unjust and increasingly tangled ERISA regime.") (quoting *DiFelice v. Aetna U.S. Healthcare*, 346 F.3d 442, 453 (3d Cir. 2003)).

Plaintiff's prayer for an injunctive relief to enjoin alleged further misrepresentation of assignors/beneficiaries' remaining obligation under the plan is *akin* to what is available under Section 502(a). Thus, the fourth prong of the *Butero* test is also satisfied.

### *III.   CONCLUSION & RECOMMENDATION*

In summary, the Court finds that Plaintiff's Texas state law claims of negligence and tortious interference with contract are completely preempted pursuant to ERISA Section 502(a).

For the foregoing reasons, it is hereby recommended as follows:

Defendants' Motion to Dismiss the Class Action Complaint should be **GRANTED**, **WITHOUT PREJUDICE** to the Plaintiff filing an ERISA suit after exhausting administrative remedies, if he is unsuccessful with his administrative claim.

Pursuant to Local Magistrate Rule 4(b), the parties have ten (10) business days from the date of this Report and Recommendation to serve and file written objections, if any, with the Honorable Federico A. Moreno, United States District Judge.  Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the report and bar the parties from attacking on appeal the factual findings contained herein.  *R.T.C. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *LoConte v. Dugger*, 847 F.2d 745 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404, 410 (5th Cir. Unit B 1982) (en banc); 28 U.S.C. § 636(b)(1).

**DONE AND ORDERED** in Chambers at Miami, Florida, this 13th day of March, 2009.

*/s/ Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge